UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WILLIAM D. SMITH,

                Plaintiff,

-against-

NEW YORK STATE DEPARTMENT OF
CORRECTIONAL SERVICES,
SUPERINTENDENT ROBERT CUNNINGHAM,
LT. HOLLORAN, SORC - MR. NICHOLAS
CHALK, HEARING OFFICER WOODBOURN
CORRECTIONAL FACILITY,

                Defendants.

15-cv-3455 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

Plaintiff William D. Smith, proceeding *pro se*, commenced this action on April 23, 2015 (*See* Compl., ECF No. 2) against the New York State Department of Correctional Services,[1] Superintendent Robert Cunningham, Lieutenant Holloran, and SORC Nicholas Chalk. Plaintiff brings claims under 42 U.S.C. § 1983 sounding in deliberate indifference, cruel and unusual punishment, infliction of emotional pain and denial of procedural due process in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. (*See* Second

---

[1] This Court dismissed Defendant New York State Department of Correctional Services in an Order of Service dated August 6, 2015. (ECF No. 9.) In that Order, this Court noted that state governments may not be sued in federal courts unless they have waived their immunity or unless Congress abrogated the states' immunity under the Eleventh Amendment. (*Id.* at 2.) Since New York has not waived their immunity, nor has Congress abrogated it, the Defendant was dismissed from the suit. (*Id.*) Plaintiff then amended his complaint on two occasions, again adding New York State Department of Correctional Services. (ECF Nos. 23 & 59.) The Defendant, whose proper name is the New York State Department of Corrections and Community Supervision ("DOCCS"), must again be dismissed from this suit pursuant to the Eleventh Amendment.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/21/2018

Amended Complaint ("SAC"), ECF No. 59.) Before the Court is Plaintiff's Partial Motion for Summary Judgment and Defendants' Cross-Motion for Summary Judgment. For the following reasons, Plaintiff's motion is DENIED and Defendants' motion is GRANTED.

**Background[2]**

Plaintiff William D. Smith ("Smith") was incarcerated at the Woodbourne Correctional Facility ("Woodbourne") in Woodbourne, New York. While at Woodbourne, Plaintiff worked as a porter in the B-1 Company ("B-1"). (Decl. of Daniel Schulze in Supp. of Def. Cross-Motion for Summ. J. ("Schulze Decl."), Exh. A, Inmate Misbehavior Report ("Misbehavior Report") 1, ECF No. 87; Decl. in Supp. of Pl. Mot. for Partial Summ. J. ("Smith Decl.") ¶ 3, ECF No. 81.) While working in B-1 on February 4, 2013, Defendant Lieutenant Holloran approached Plaintiff and advised him that he would no longer be able to work as the B-1 porter and that he would be reassigned. (Misbehavior Report 1; Smith Declaration ¶ 4.) The next day, Plaintiff spoke to Corrections Officer ("C.O.") Carpenter, who told Plaintiff that he should continue working as the B-1 porter. (Smith Decl. ¶ 4; Schulze Decl., Exh. B, Tier III Hearing Transcript ("Transcript") 5.) On February 7, 2013, Defendant Holloran found out that despite his order, Plaintiff reported to B-1. (Misbehavior Report 1.) Soon thereafter, Defendant Holloran wrote a misbehavior report, accusing Plaintiff of disobeying his direct order and being out of place. (*Id.*; Def. Rule 56.1 Statement in Supp. of their Cross-Mot. for Summ. J. ("Def. Cross-Mot. 56.1") ¶ 1, ECF No. 84.)

Following the misbehavior report, prison officials charged Plaintiff with violating Rules 106.10, disobeying a direct order, and 109.10, being out of place. (Statement of Undisputed Facts (" Pl. 56.1") ¶ 1, ECF No. 81; Def. Rule 56.1 Counter-Statement ¶ 1, ECF No. 88.) Plaintiff was placed in keeplock pending the hearing on the charges. (Def. Cross-Mot. 56.1 ¶ 2.) In anticipation of Plaintiff's Tier III hearing, Plaintiff received assistance from Sergeant Cohn, who, at Plaintiff's request, interviewed four potential witnesses. (*Id.* ¶¶ 3, 5.)[3]

---

[2] The following facts are drawn from the parties' 56.1 submissions, the record, and are undisputed unless otherwise noted.
[3] Plaintiff identified the potential witnesses on Woodbourne's "Assistant Form" that was given to Sergeant Cohn in anticipation of the hearing. (Schulze Decl., Exh. C, Assistant Form.)

Plaintiff's Tier III disciplinary hearing was held before Defendant Chalk on February 12 and 13, 2013. (*Id.* ¶ 3.) At the hearing, Plaintiff confirmed that he was provided with notice of the charges against him in advance of the hearing. (*Id.* ¶ 4; Transcript at 1.) Defendant Chalk then read Plaintiff his rights and read Plaintiff's misbehavior report into the record. (Def. Cross-Mot. 56.1 ¶ 6; Transcript at 1.) Plaintiff entered a plea of not guilty. (Def. Cross-Mot. 56.1 ¶ 6.)

During the hearing, Defendant Chalk called three witnesses on Plaintiff's behalf. (*See* Pl. 56.1 ¶ 5; Def. 56.1 Counter-Statement ¶ 5; Transcript at 2.)[4] Testimony was taken from Plaintiff's three witnesses, and Plaintiff questioned them through Defendant Chalk. (Def. Cross-Mot. 56.1 ¶ 14.) C.O. Carpenter testified that he was unaware that Plaintiff had been directed by a Sergeant Holloran not to report to B-1, and that he allowed Plaintiff to continue working as the B-1 porter. (*Id.* ¶ 15.) Sergeant Bowers testified that he told C.O. Carpenter that he also had not heard anything from another Sergeant as to whether Plaintiff should be working as the B-1 porter. (*Id.* ¶ 16.) Defendant Superintendent Cunningham testified that he saw Plaintiff working as a porter on B-1 Company while making rounds at an unspecified time. He also testified that he was unaware at the time whether Sergeant Holloran had ordered Plaintiff not to report to B-1. (*Id.* ¶ 17.) Plaintiff also testified in his own defense and stated that he had received an order from Sergeant Holloran not to go onto B-1, and that he, nonetheless, went onto B-1. (*Id.* ¶¶ 8–9.) Plaintiff further testified that he returned to B-1 because Defendant Carpenter had instructed him to continue working there. (*Id.* ¶ 9.)

---

[4] Plaintiff's main contention is that Defendant Chalk failed to call a fourth witness, inmate Smith. At the Tier III hearing, Plaintiff confirmed the identities of the witnesses Plaintiff wished to testify. (Def. Cross 56.1 ¶ 11; Transcript at 2.) Plaintiff did not inform Defendant Chalk that he wanted to call inmate Smith as a witness. (Def. Cross 56.1 ¶¶ 12–13.)

Sergeant Holloran also testified at the hearing and noted that he gave Plaintiff an order that he was not allowed to be on B-1 unless given a separate order to the contrary from someone above the rank of Captain. (*Id.* ¶ 7.)

Defendant Chalk found Plaintiff guilty of all charges and prepared a written disposition that was read into the record. (Pl. 56.1 ¶¶ 7–8; Def 56.1 Counter-Statement ¶ 8; Transcript at 9.) Defendant Clark stated:

> I find you guilty of the charges 106.10 Refusing a Direct Order and 109.10 Out of Place. The penalty I'm imposing is 65 days SHU. The evidence relied upon is the written report of Sgt. Holloran and his testimony during the hearing. Also taken into account was your testimony as well as that of your requested witnesses. The reason for this disposition is to impress upon you [that] such misconduct will not be tolerated. All orders given in a correctional setting must be complied with.

(Def. Cross-Mot. 56.1 ¶ 18; Transcript at 9.) Plaintiff was then advised that he could appeal his Tier III conviction directly to the commissioner. Plaintiff confirmed that he understood his appeal rights. (Def. Cross-Mot. 56.1 ¶ 19; Transcript at 9.)

On February 15, 2013, Plaintiff applied for discretionary review to Defendant Superintendent Robert Cunningham, who declined to conduct such review (Schulze Decl., Exh. E., Superintendent's Tier III Hearing Discretionary Review Request ("Review Request") 1; Pl. Exh. in Further Supp. of Pl. Mot. For Summ. J., Reply to Request for Discretionary Review, Exh. E, ECF No. 96; Def. Cross-Mot. 56.1 ¶ 20.).[5] In declining to conduct a discretionary review of the conviction, Defendant Cunningham told Plaintiff that he could appeal the Tier III hearing decision directly to the "Central Office." (Def. Cross 56.1 ¶ 21; Schulze Decl., Exh. F, Mem. to William Smith from Robert F. Cunningham ("Review Response") 1.) Plaintiff

---

[5] Plaintiff noted that he "appealed" Defendant Chalk's decision to Defendant Cunningham. Defendants note, however, and the record confirms, that the application Plaintiff made was instead one for discretionary review. (Pl. 56.1 ¶¶ 9–10; Def. 56.1 Counter-Statement ¶¶ 9–10.)

eventually appealed his conviction to the Central Office, and on April 2, 2013, Albert Prack, on behalf of the commissioner, reversed and expunged the conviction, noting that the "circumstances surrounding incident raise questions as to inmate's culpability." (Def. Cross 56.1 ¶ 22; Schulze Decl., Exh. G, Mem to Robert F. Cunningham from Albert Prack ("Appeal Decision") 1.)

## **Legal Standard**

Rule 56 of the Federal Rules of Civil Procedure provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents [and] affidavits or declarations," *id.* at 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may also support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations and citations omitted). The moving party must "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp.*, 477 U.S. at 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 243, 247–48 (1986). "Before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." *Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014).

The Court notes that Plaintiff is proceeding *pro se* and "it is well established that a court is ordinarily obligated to afford a special solicitude to pro se litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). "The solicitude afforded to *pro se* litigants takes a variety of forms," most often consisting of "liberal construction of pleadings, motion papers, and appellate briefs." *Id.* As the Second Circuit has expressed, this special solicitude is especially relevant in the context of motions for summary judgment. *Jackson*, 766 F.3d at 195 ("[W]e are less demanding of [pro se] litigants generally, particularly where motions for summary judgment are concerned"). It is through this lens of leniency towards *pro se* litigants that this Court must consider the motions before it.

## Discussion

Plaintiff moves for Partial Summary Judgment on his claim that he was denied procedural due process during his disciplinary hearing, resulting in a sentence of 65 days confinement in the Special Housing Unit ("SHU"). (Brief in Supp. of Pl. Mot. for Partial Summ. J. ("Pl. Mot.") 1, ECF No. 81.). Defendants likewise move for summary judgment on the procedural due process claim and to dismiss any state law claims against the State of New York. (Def. Mem. of Law in Opp. to Pl. Mot. for Summ. J. and in Supp. of Def. Cross-Mot. for Summ. J. ("Def. Mot.") 1–2, 16, ECF No. 85.)

### I. Procedural Due Process

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To state a procedural due process claim, Plaintiff must show "(1) that Defendants deprived him of a cognizable interest in life, liberty, or property, (2) without affording him constitutionally sufficient process." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (quotations and citations omitted).

A prisoner's liberty interest may be implicated by SHU confinement "only if the discipline imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (quotations and citations omitted). "Factors relevant to determining whether the plaintiff endured an atypical and significant hardship include the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation imposed . . ." *Id.* (quotations and citation omitted). Although the Second Circuit has declined to establish bright-line rules in this area, it has previously determined that confinement in even "normal" SHU conditions for 305 days constitutes "a sufficient departure from the ordinary incidents of prison life" to suggest a protected liberty interest. *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000).

"Once an inmate demonstrates a liberty interest in avoiding segregated confinement, he or she must also show that assignment to such confinement occurred without due process of law." *Hamilton v. Deputy Waren*, No. 15-CV-4031 (KBF), 2016 WL 6068196, at *7 (S.D.N.Y. Oct. 13, 2016). An inmate facing disciplinary confinement is "entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). "In addition, the disciplinary ruling must be supported by 'some reliable evidence.'" *Smith v. Arnone*, 700 F. App'x. 55, 56 (2d Cir. 2017) (summ. order) (quoting *Sira*, 380 F.3d at 69).

### a. Liberty Interest

Defendants argue that there is no issue of material fact concerning the existence of a liberty interest with respect to Plaintiff's SHU confinement. The Court agrees.

"An inmate has a liberty interest protected by procedural due process when his confinement subject[s][him] to atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Fludd v. Fischer*, 568 F. App'x. 70, 72 (2d Cir. 2014) (summ. order) (quotations and citation omitted). As noted above, district courts must take various factors into consideration when making this inquiry, resulting in "extensive fact-finding as to the specific conditions of the inmate's disciplinary confinement." *Scott v. Coughlin*, 78 F. Supp. 2d 299, 306 (S.D.N.Y. 2000).

The record before the Court is bereft of evidence concerning the conditions of Plaintiff's disciplinary confinement. The only information in the record related to Plaintiff's condition of confinement is that Defendant Chalk sentenced Plaintiff to 65 days in the SHU. (Transcript at 9.) Although the duration and frequency of SHU confinement is "highly relevant" to the current analysis, *Scott*, 78 F. Supp. 2d at 306, such a period of time, without more information, is generally not considered an atypical or a significant hardship. *Davis*, 576 F.3d at 133 ("We have also stated that SHU confinements of fewer than 101 days 'could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions . . . or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical.'") (citing *Palmer v. Richards*, 364 F.3d 60, 65 (2d Cir. 2004)). Sixty five days confinement in the SHU, without more, is insufficient to create a protected liberty interest. Therefore, there is no issue of material fact concerning the question of an implicated liberty interest, and consequently, the procedural due process claim necessarily fails as a matter of law.

### b. Constitutionally Sufficient Process

In any event, Plaintiff likewise fails to demonstrate an issue of material fact concerning the process afforded to him during the Tier III hearing.

Defendants argue that there is no issue of material fact concerning whether Plaintiff was given the constitutionally sufficient process due during his disciplinary hearing. Defendants first argue that this very issue was decided in the New York Court of Claims.

### i. Collateral Estoppel

Defendants argue that the constitutional inadequacy complained of—Defendant Chalk's purported failure to call Plaintiff's fourth witness—was fully litigated and decided in state court. If Defendants are correct, they argue, Plaintiff's procedural due process claim necessarily fails in its entirety. (Def. Mot. 7–8.)

Collateral estoppel, or issue preclusion, bars the re-litigation of issues that were "'clearly raised in a prior action or proceeding and decided against that party . . . , whether or not the tribunals or causes of action are the same.'" *Town of Ramopo, New York v. Town of Clarkstown*, No. 16 Civ. 2004 (NSR), 2017 WL 782500, at * 6 (S.D.N.Y. Feb. 27, 2017) (citing *Leather v. Eyck*, 180 F.3d 420, 425 (2d Cir. 1999)). Collateral Estoppel under New York law is applicable upon a showing of two factors: "First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination." *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455 (1985).

Defendants direct the Court's attention to a 2014 decision by the New York State Court of Claims. (Schulze Decl., Exh. H., Smith v. State of New York ("Court of Claims Decision") 1.) That action, filed by Plaintiff against the State of New York for wrongful confinement, stemmed from the same incident subject to this federal suit. In that case, Plaintiff alleged that he was wrongfully confined to the SHU as a result of the finding of guilt at the Tier III hearing. (*Id.*) Plaintiff moved for summary judgment on the issue that Defendant violated its own rules and regulations. Among Plaintiff's arguments on summary judgment, he alleged that Defendants

violated their rules and regulations by "denying him the opportunity to call inmate Philip Smith as a witness at the disciplinary hearing." (*Id.* at 3) The Court briefly noted that although Plaintiff submitted an affidavit from Smith indicating that he was willing to testify, was told he would be called as a witness, but was not, "in the transcript of the hearing, there is a discussion of the witnesses claimant intended to call, and inmate Philip Smith is never mentioned." (*Id.*)

The Court went on to state that "it does not appear that claimant demonstrated violations of any relevant rules and regulations." (*Id.* at 4.) Judge Marin then noted that "in any event, I find that his claim must fail" for the reasons articulated in *Loret v. State of New York*, 106 A.D.3d 1159 (3d Dept. 2013). (*Id.*) In *Loret*, the Plaintiff sued the State of New York for damages after the Third Department overturned his disciplinary conviction in an Article 78 Proceeding. Following the reversal, the Third Department found that Plaintiff's claim for damages failed because "claimant ha[d] not articulated any facts to support his claim that the correctional facility employees responsible for his discipline acted in excess of their authority or in violation of any relevant rules or regulations." *Loret*, 106 A.D.3d at 1159. Additionally, the Court noted that their previous annulment of claimant's guilt did not rest on any violations of the facility's rules and regulations, but rather "upon a finding that [the finding of guilt] was not supported by substantial evidence." *Id.* at 1159–60.

Taken together, Judge Marin's Opinion found that it did not appear that Plaintiff demonstrated a violation of any relevant rules or regulations, and in any event, Defendant was entitled to immunity because, just like in *Loret,* "claimant's disciplinary disposition was not overturned based on a violation of any rule or regulation, but rather what is essentially the ground that his guilt was not supported by the evidence." (Court of Claims Decision at 4.) It is not clear, then, if Judge Marin decided whether or not Plaintiff was denied the opportunity to call

Smith as a witness. Consequently, this Court is not prepared to find that the identical issue was necessarily decided by the New York Court of Claims. *Kaufman*, 65 N.Y.2d at 455.

### ii. Sufficient Process

Notwithstanding, Defendant's Motion for Summary Judgment must be granted because there is no issue of material fact concerning Defendant Chalk's purported refusal to call Plaintiff's fourth witness.

Inmates have a due process right "to summon witnesses in [their] defense at a prison disciplinary hearing, provided facility officials do not determine that this would in any way threaten institutional safety or correctional goals." *Bedoya v. Coughlin*, 91 F.3d 349, 352 (2d Cir. 1996) (citation omitted). Typically, inmates "may request witnesses either before or during a disciplinary hearing." *Marino v. Humphrey*, No. 05 Civ. 6571(SAS), 2006 WL 2786182, at *6 (S.D.N.Y. Sept. 27, 2006). The right to call witnesses, however may be waived, particularly by "failing to make or reiterate a request" for a witness. *Id.* "[A] prisoner must object to the hearing officer's failure to call a requested witness before the close of the hearing, or he is deemed to have waived that request." *Id.* "This is true regardless of whether the prisoner requested the witness before or during the hearing, so long as the request was not specifically denied." *Id.*

Here, there is no issue of material fact concerning the reasonable opportunity to call witnesses and present documentary evidence afforded to Plaintiff. The evidence presented by both parties establishes that Plaintiff enlisted the assistance of Sergeant Cohn for pre-hearing preparations. (Assistant Form at 1; Transcript at 2). Plaintiff indicated to Sergeant Cohn on the Assistant Form that there were four potential witnesses that he wished "to be interviewed as witnesses." (Assistant Form at 1). Those witnesses included Sergeant Bowers, C.O. Carpenter, Superintendent Cunningham, and inmate Smith. (*Id.*). At the disciplinary hearing, Defendant

Chalk asked if Plaintiff had chosen witnesses for the hearing, and if those witnesses were Sergeant Bowers, C.O. Carpenter, and Superintendent Cunningham. (Transcript at 2.) Plaintiff answered in the affirmative. (*Id.*) These witnesses, as well as Defendant Holloran, proceeded to testify. At no point during the hearing did Plaintiff suggest or mention the testimony of inmate Smith. Accordingly, there is no issue of material fact as to the denial of a witnesses. Plaintiff never requested the presence of Smith at any point during the hearing, and a failure to request a witness amounts to a waiver of such testimony. *Bedoya*, 91 F.3d at 352 ("plaintiff waived his right to call the witness by failing either to reiterate his request for [the potential witnesses'] testimony when given the opportunity or to object to the close of the hearing"); *Marino*, 2006 WL 2786182, at *4 ("a prisoner can waive his right to call witnesses or offer other evidence by failing to make or reiterate a request for such evidence."); *Cox v. Malone*, 199 F. Supp. 2d 135, 144 (S.D.N.Y. 2002) (finding that Plaintiff waived his right to call a witness by failing to lodge any objections at the close of the hearing).[6]

## II. State Law Claim

Defendants also argue that any state law claims raised against them as state officials are barred by the Eleventh Amendment to the United States Constitution. (Def. Mot. 16.) To the

---

[6] The Court also notes that the evidence presented establishes that there is no issue of material fact that Plaintiff received advance written notice of the charges against him and a written statement of the disposition including the evidence relied upon and the reasons for the disciplinary action taken. (*Id.* at 1, 9.) *See Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). Further, there is no issue of material fact as to whether the disciplinary ruling was supported by "some reliable evidence." *Smith v. Arnone*, 700 F. App'x. 55, 56 (2d Cir. 2017) (summ. order) (quoting *Sira*, 380 F.3d at 69). The disciplinary hearing transcript, as well as the evidence presented to this Court, contains some evidence indicating that Defendant Holloran gave Plaintiff a direct order which he disobeyed. (Transcript at 6–7)

extent that Plaintiff attempts to bring state law claims against Defendants as state officials, those claims are dismissed.[7]

The Eleventh Amendment generally "forbids suits against states for monetary damages." *Kirkendall v. Univ. of Connecticut Health Ctr.*, 205 F.3d 1323 (2d Cir. 2000). The Second Circuit has held that "'[t]o the extent that a state official is sued for damages in [their] official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state.'" *Davis v. Westchester Cty. Family Court*, No, 16-CV-9487 (KMK), 2017 WL 4311039, at *6 (S.D.N.Y. Sept. 26, 2017) (quoting *Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993)). Most relevant here, is the "well settled" doctrine that "the eleventh amendment to the United States Constitution prohibits federal courts from entertaining suits that seek to enforce state law against state officers." *Wolpoff v. Cuomo*, 792 F. Supp. 964, 965–66 (S.D.N.Y. 1992) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984)); *Deadwiley v. New York State Office of Children & Family Services*, 97 F. Supp. 3d 110, 116 (E.D.N.Y. 2015) ("the Eleventh Amendment bars the adjudication of pendent state law claims against nonconsenting state defendants in federal court.") (quotations and citation omitted). Given the Eleventh Amendment's prohibition, any state law claims asserted against Defendants in their official capacities are barred by the Eleventh Amendment.[8]

---

[7] It appears that Plaintiff attempts to bring at least one state law claim against Defendants for Infliction of Emotional Pain. (*See* SAC at 1.)

[8] Any state law claims brought against Defendants in their personal capacities are barred by New York Corrections Law § 24. *See Gill v. Tuttle*, 93 F. App'x 301, 302 (2d Cir. 2004) ("New York Correction Law § 24 bars federal suit on state-law claims against officers in their individual or personal capacities"); *see also Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996) ("If a state would not recognize a plaintiff's right to bring a state claim in state court, a federal court exercising pendent jurisdiction, standing in the shoes of a state court, must follow the state's

### III. Remaining Claims

It is evident from the face of the SAC, and the title of Plaintiff's "Motion for Partial Summary Judgment," that Plaintiff attempts to assert more than the procedural due process claim. Specifically, the SAC states that Plaintiff also brings a claim of deliberate indifference and cruel and unusual punishment in violation of the Fifth, Sixth, Eighth and Fourteenth Amendment to the United States Constitution. (SAC at 1.) The vitality of those claims were not subject of the motions before this Court, and thus, survive the instant motions for summary judgment.[9] The Court reminds *pro se* Plaintiff that the viability of those claims hinges on any challenges from Defendants, including possible motions to dismiss or motions for summary judgment.

---

jurisdictional determination and not allow that claim to be appended to a federal law claim in federal court").

[9] Defendant notes that "Plaintiff's complaint appears to be limited to the due process claims on which he moved for summary judgment." (Def. Mot. 16.) Given that the first page of the complaint shows Plaintiff's express intention to bring claims apart from the instant due process claim, the proper manner to address those claims would be either through a Motion to Dismiss or one of Summary Judgment. The Court cannot make a determination on the viability of these claims at this juncture because those issues are not properly before this Court

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is DENIED and Defendants' Cross-Motion for Summary Judgment is GRANTED. A pre-trial status conference is scheduled on May 31, 2018, at 11:00 a.m. to discuss the remaining claims. Defendants' counsel is to appear in person and Plaintiff shall appear by telephone. Defendants' counsel is directed to make the necessary arrangements with the appropriate facility for Plaintiff to be available by telephone.

The Clerk of Court is respectfully requested to terminate the motions at ECF Nos. 81 & 83. The Clerk of Court is also directed to mail a copy of this Opinion to Plaintiff at the address below and show proof of service on the docket.

Dated: May 21, 2018
        White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

**SERVICE ADDRESS**
William D. Smith
 08-B-0527
Wende Correctional Facility
P.O. Box 1187
Alden, NY 14004-1187